### RIGGINS, trustee, *v.* BOYD MANUFACTURING CO.

The trial court committed no error requiring a reversal of the judgment below, in ruling out the evidence introduced by the defendant.

Submitted May 17, — Decided June 14, 1905.

Complaint. Before Judge Russell. Pike superior court. October 6, 1904.

Joseph D. Boyd Manufacturing Company sued A. D. Riggins, as trustee for his wife, M. S. Riggins, on a promissory note, for $210.87 principal, which he as her trustee had executed to it, dated February 25, 1901, and due October 15 after date. The petition alleged, that the consideration of the note was fertilizers furnished by the plaintiff to the defendant as trustee, which were used by him as such, on certain lands belonging to the trust estate, and that they were articles of necessity for which the trust estate was liable. A copy of the deed creating the trust and describing the lands of the estate was attached to the petition, as well as a copy of an order of the judge of the superior court appointing the defendant trustee in lieu of a former trustee. The petition asked for a special judgment against the lands of the trust estate described therein. The defendant in his answer admitted that he was trustee as alleged, and pleaded payment. The plea alleged, that the defendant, as trustee, in the year 1900, bought of the plaintiff designated quantities and kinds of fertilizers of the aggregate value of $367.75;

that in the fall of the same year he paid the plaintiff a stated quantity of lint cotton of the value of $462, which overpaid the amount of his indebtedness to the plaintiff $94.25. On the trial the plaintiff put in evidence the note sued on, and introduced a witness who testified that the consideration of this note was fertilizers bought by the defendant as trustee for M. S. Riggins, and that the trust estate got the benefit of such fertilizers by reason of their use upon the lands of the estate. The plaintiff introduced also a trust deed dated April 13, 1857, whereby a trust in certain lands, negroes, etc., was created for the benefit of Mary Susan Neal, now Mrs. M. S. Riggins. The defendant put in evidence a note signed by him as trustee for M. S. Riggins, payable to the plaintiff, for $670.50, dated May 29, 1900, and due October 15 after date, the consideration of which was thirteen tons and eight sacks of guano and five sacks of acid, with credits thereon of 4,362 pounds of lint cotton. The defendant testified: " That the note sued on was a renewal note for the balance of the $670.50 note given May 29, 1900; that he bought a part of the guano for the trust estate, and a part of it he bought for sale, and did sell a part of it, and used a part of it on the trust estate ; that he signed the note as trustee because they asked him to do that; that at the time the guano was bought nothing was said about his buying it as trustee, but he did use on the trust estate ten tons and eight sacks of the guano; and that he used the seven and one half tons of acid; that the market value of the guano at the time he bought it was $20 per ton, and the market value of the acid at the time he bought it was $17.50 per ton, the total amounting in the aggregate to $347.25; that he as trustee paid, from the crops of the trust estate, upon the guano debt the amount of four thousand, three hundred and sixty-two pounds of middling lint cotton, as appeared from the credits upon the note introduced in evidence, dated May 29, 1900, for the sum of $670.50; that the trust estate had not bought or in any way received anything else from the plaintiff, nor [did] he or the trust estate owe the plaintiff anything else, . . that his wife, M. S. Riggins, had then living eight children; that the cotton he had delivered to plaintiff from the trust estate was worth, at the time he made the delivery, 9-1/2 cents per pound, and making the aggregate

amount thus paid $414.39, which more than paid off all that the trust estate actually owed the plaintiff upon said note." On motion of the plaintiff, the court ruled out the note put in evidence by the defendant and all of the defendant's testimony, except that Mrs. Riggins had eight children then living. The court then directed a verdict for the plaintiff. The only error assigned is the ruling out of the evidence offered by the defendant as above set forth.

*G. D. Dominick* and *E. C. Armistead,* for plaintiff in error.
*E. F. DuPree,* contra.

FISH, P. J. The trust involved in this case was construed in *Riggins* v. *Adair,* 105 *Ga.* 727, where it was held that the trust created is executory, at least during the lifetime of Mrs. Riggins, and that the property of the trust estate is liable for debts created by the trustee for the benefit of such estate. In that case the trust estate was held to be bound for a debt contracted for fertilizers bought for its use. The evidence for the plaintiff, in the present case, made out a clear case of liability on the part of the trust estate for the amount represented by the note sued on, and, unanswered, demanded a verdict in favor of the plaintiff for the full amount. The defendant sought to meet this by evidence which the court ruled out, and the sole question which we are to decide is whether the court committed a reversible error in ruling out this evidence; for there is no exception to the direction of a verdict by the court or to the particular verdict which was directed. Whether the court was right or wrong in the ruling complained of is, in the view which we take of the case, immaterial. If this evidence had remained in, the jury could not have lawfully found in favor of the defendant generally, nor reduced the amount of the plaintiff's proved claim. . From the evidence in question it appeared "that the note sued upon was a renewal note for the balance of the $670.50 note given May 29, 1900." This last-mentioned note showed that it was given by the defendant as trustee, which fact he neither denied in his answer nor by his testimony. He did testify that at the time he bought the fertilizers for which this note was given, nothing was said about his buying them as trustee. But, on the other hand, he failed to state that anything was said about his buying them,

or any part of them, individually.   How then did he buy them?
Presumably, from the way he signed the note, he purchased them
as trustee.   He testified that he signed the original note as trus-
tee, because "they" asked him to do that, a request which was
both natural and proper if he bought the fertilizers for the trust
estate, and which when made, in the absence of anything to the
contrary, put him upon notice that the intention of the seller was
to sell the goods to him in his capacity as trustee.   He said noth-
ing to the seller to indicate that he was not purchasing all of the
fertilizers for the trust estate, and when he was asked to sign the
note as trustee he did so without explanation or objection.   If
he did not intend to contract in his capacity as trustee for the
whole of the fertilizers which he purchased, the time for him to
have made this known was when he was asked to do so.   As we
have already intimated, when he bought the fertilizers for the
purchase-price of which the original note was given, and signed
such note in his capacity as trustee, the presumption was that he
purchased the goods in his representative and not in his individ-
ual capacity.   This presumption was not overcome by the mere
statement "that at the time the guano was bought nothing was
said about his buying it as trustee."   When he signed the note
in his representative capacity, something was said, or rather de-
clared, in writing, as to the capacity in which he purchased the
fertilizers.   His statement that he did this because the seller
asked him to do it is perfectly consistent with the idea that he
bought the whole of the goods as trustee, while the manner in
which he signed the note is inconsistent with the idea that he
did not so purchase them all.   He gave no explanation whatever
as to why he signed the renewal note as trustee, after having, as
he testified, paid all that the estate owed for the fertilizers.   He
testified " that he bought a part of the guano for the trust estate,
and part of it he bought for sale," but he did not testify that
this was understood between him and the seller, or that the
latter knew that such was the fact; and he failed to state what
part he bought for the trust estate, or how much he purchased
for himself, nor did he state what the contract price of the guano
or the contract price of the acid was.   How, then, was it possible
for a jury to find, either wholly or partially, in favor of his
plea?   Granting that it was permissible for him, after signing

both the original and the renewal note as trustee, to show that, at the time of the purchase, his undisclosed intention was to buy a part of the goods for the trust estate and a part for himself individually, it was still incumbent upon him, in order to overcome, either in whole or in part, the case made by the evidence for the plaintiff, to show what he bought for the trust estate and what he purchased for himself, and what the contract price was. This he utterly failed to do. He did testify that he used ten tons and eight sacks of the guano on the trust estate and used the seven and one half tons of acid, and sold three tons of the guano, but this did not show that the three tons of guano which he sold were not bought for the trust estate, and the seller was not bound to follow him up and see that he used all the fertilizers for the trust estate. Even if he had shown what part of the fertilizers he purchased for the trust estate and what part he bought for himself, there was no way of fixing the amount to be deducted from the plaintiff's proved claim against him as trustee, for the reason that he failed to show what the contract price of the guano or the contract price of the acid was.

The testimony in reference to the market value of the fertilizers and the market value of the cotton paid on the original note was wholly irrelevant and immaterial. The plaintiff was not suing upon a quantum meruit, but for a balance due under a contract of sale, and the price of the fertilizers was fixed by the contract between the parties, and could not be altered by proof of their market value at the time of purchase. This would be true even if the sale had been for cash, to which market value presumably refers; whereas the sale in question was upon a credit. The defendant could not go behind the renewal note for the purpose of showing the market value of the cotton which he as trustee had delivered to the plaintiff in part payment of the original note. For clearly the aggregate amount paid in cotton on the old note must have been agreed upon by the parties when the new note was given for the balance due. The giving of the renewal note was a distinct and clear recognition of the amount still due after the cotton payments had been made on the old note, and, in the absence of any proof as to fraud, accident, or mistake in the settlement evidenced by this note, no evidence as to the value of the cotton paid on the old note was relevant. As

the evidence for the plaintiff demanded a verdict in its favor for the full .amount of the note sued on, and the evidence offered by the defendant would .not have authorized the jury to find any other verdict, the court committed no error requiring a reversal of the judgment below, in the ruling complained of.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*